### [No. 4131.]

## THE ROCKY MOUNTAIN OIL CO. V. PHILLIPS.

1. APPELLATE PRACTICE—EVIDENCE.

A judgment will not be reversed because of the admission of immaterial evidence, where appellant was not prejudiced by its admission and where appellant was as much responsible as appellee for the admission of such evidence.

2. CORPORATIONS—TRUSTEES—COMMINGLING OF FUNDS.

Defendant, a corporation, transferred its personal property to a trustee with authority to dispose of the same and to pay the debts of the company, and the trustee employed plaintiff to manage the affairs of the trust at a stipulated salary per month, afterwards plaintiff was made manager of the corporation's business and his salary therefor was fixed at a certain salary per year. The corporation continued its business, that of producing crude oil, the same as before the creation of the trust, and the product was commingled with that belonging to the trust fund, and the current expenses of the corporation were paid from the trust fund, and from time to time plaintiff rendered statements to the corporation officers, showing that he had paid himself out of this commingled fund his stipulated monthly salary as manager of the trust fund, and also charged himself with certain sums as payments on his salary as manager for the corporation from the same fund. No objection was made to the method of conducting the business. Held that the course of business adopted by the trustee and the corporation, and sanctioned by the beneficiaries of the trust, was such as to entitle plaintiff not only to his stipulated salary from the trustee, but also to his salary as manager of the corporation business; and that he had a right to pay himself both salaries out of the commingled fund. And having paid himself all his salary as manager of the trust, and part of his salary as manager for the corporation, he could maintain an action against the corporation for the balance, and was not required to apply the amount received to the payment of salary from the corporation.

*Appeal from the District Court of Arapahoe County.*

Messrs. ROGERS, CUTHBERT, & ELLIS, for appellant.

Mesrrs. THOMAS, BRYANT, & LEE, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This action was brought by L. D. Phillips, appellee, to recover from The Rocky Mountain Oil Company the sum of $6,356.23 for services rendered by him as its assistant secretary and treasurer and assistant general manager from June 15, 1894, to June 1, 1897. There were two counts in the complaint: the first declared upon an express, the second on an implied, contract. The answer denied the implied, but admitted the express, contract and pleaded payment in full. Judgment was in plaintiff's favor for the full amount claimed, and therefrom defendant has appealed. To a clear understanding of the controversy a brief statement of the facts becomes necessary.

The Rocky Mountain Oil Company was indebted to certain of its stockholders and officers in a large sum of money, and it arranged with some of them for a loan of a further sum. To secure these debts the company executed a deed of conveyance of a large quantity of its personal property in trust to Henry I. Higgins, as trustee, conferring upon him full power to manage, sell and dispose of the same, and with the proceeds of the sale to pay the beneficiaries. Mr. Higgins accepted the trust and entered upon the discharge of his duties about the first of April, 1894. He was a man of extensive business

interests, and soon ascertaining that he would not be able to give personal attention to the details of the business thus undertaken, certainly with the knowledge, and apparently with the consent, both of the trustor and the beneficiaries, he employed L. D. Phillips, the plaintiff in this action, to assume the active management and supervision of the property covered by the trust and agreed to pay him as compensation the sum $200 per month.

The principal stockholders and directors of the oil company lived at Cleveland, Ohio, and from that point, it would appear, its management was directed. Mr. Claflin was its principal representative in Colorado and held the offices of assistant secretary and treasurer and assistant general manager. About the 15th of June, 1894, he was called by his superior officers to Cleveland, and before leaving this state appointed the plaintiff assistant secretary, assistant treasurer and assistant general manager, and such action was afterwards ratified by the board of directors. No compensation for such services was fixed at the time of the appointment and not till about the month of August, 1896, although frequent and urgent requests were made by Mr. Phillips to the officers of the company to fix his compensation before their action allowing him $2,500 a year was had. The oil company continued its business as before the declaration of trust, and this business consisted of producing crude oil from its wells in Fremont county and selling the same to the Western Oil Company for refining.

From the time of the respective appointments, Mr. Phillips had full charge of the trust estate as well as the business of the oil company. The principal business of the trustee was to convert into money the trust estate, while that of the oil company was the production of oil. The company, however, owned an extensive refinery at Overton costing about $700,000, and the care of this, as well as all its other valuable property in Colorado, was entrusted entirely to plaintiff. No question is raised here as to the right of the trustee to employ the plaintiff and pay him a reasonable compensation, and it will be observed from the foregoing statement of the pleadings that the sole and material issue was whether the company had paid to the plaintiff the salary which it agreed to give.

Possibly some evidence, both in behalf of plaintiff and defendant, was offered and admitted which was immaterial, but notwithstanding this fact, as already indicated, we are clearly of opinion that defendant was not prejudiced by it, and, to say the least, it was as much responsible as the plaintiff for these irregularities.

Defendant now insists, as would seem from the testimony of its treasurer, that it knew of plaintiff's hiring by Higgins at $200 a month and supposed when it engaged him to represent the company this compensation was to cover both employments, and that the naming of plaintiff's salary in August, 1896, at $2,500 per year was merely an increase by $100 of that theretofore fixed; and the principal error relied upon for reversal is that the jury failed to give proper credit for payments, receipt of which the plaintiff, it is said, admitted, and that if this had been done there

would have been no verdict at all in plaintiff's favor, or for a much less sum than that returned.

It appears from the accounts brought up in the record that the plaintiff has received from the defendant company and the trustee a larger amount of money than the total amount of the salary here claimed; and if there were no sufficient explanation of this fact, possibly it would be our duty to reverse the judgment. Yet we are satisfied [that such explanation is furnished, as exemplified in the methods employed by the plaintiff with the sanction of the parties concerned, in conducting these two kinds of business under the two distinct employments. The trustee realized from the trust property between $55,000 and $60,000. Under the terms of the trust, it became his duty to turn this over to the beneficiaries. But it seems that soon after he entered upon the discharge of the duties of the trust it was agreed between the oil company and the trustee and the beneficiaries that such proceeds might be used to pay current expenses of the oil company and to discharge its indebtedness, and the crude oil which the company produced from time to time was mingled with the large quantity of oil which was transferred by the trust deed to Mr. Higgins, and the accounts of the trustee and the accounts of the company were likewise naturally commingled, and this with the knowledge and consent—certainly without any objection—upon the part of all parties concerned. There was but one set of books for the two enterprises, though a separate cash book for the company was used.

In the statements which, from time to time, were made by plaintiff to his superior officers in Cleveland, it was expressly stated that he paid himself the salary of $200 a month, as agent of the trustee, out

of the funds thus secured from the proceeds of the sales of the trust property and of the oil which the company was producing and selling from month to month. No objection was made to this method of conducting the affairs. After the fixing by the oil company of the amount of plaintiff's salary as its representative and employee, the statements which he submitted to his principal at Cleveland show that he paid, as theretofore, his salary of $200 a month as agent of the trustee, and further additional sums from month to month he charged himself with, taken out of the commingled funds as theretofore, and the total amount of such money which he applied to the salary from the oil company is $1,039.61. The total amount of his salary for the time employed at $2,500 a year would be $7,395.84. The difference between these two sums ($6,356.23) was what he claimed the company owed him at the time he left its service on the first day of June, 1897.

The defendant invokes the familiar rule that where a debtor owes the same creditor two or more distinct debts and makes a payment on them he has the right to apply the money to such debt or debts as he selects. Such is the general rule, but we do not see how it applies in this case, though defendant seems to have convinced the trial court that it does. Defendant's position is that it owed the plaintiff one debt, not two, and that one was for a salary at the rate of $2,500 a year, which it had paid. According to its contention, it had nothing to do with the salary of $200 a month which he claimed for services to the trustee.

But if, because of the apparent construction of the parties themselves that plaintiff's entire service was in reality for the company, though under two distinct

employments, it be granted that the rule invoked governs, we proceed to a further consideration of the evidence. The company's counsel say, what seems to be true, that the custom was for its treasurer in Cleveland each month to draw a draft in favor of the plaintiff, its assistant treasurer in Colorado, upon the Western Oil Company at Florence, to which its product of oil was sold, and the amount of this draft covered, and was intended to provide for, the monthly disbursements, including the item of plaintiff's salary, as per the monthly statement of plaintiff made and sent on by him to his superior officers. There was no explicit application of payments to one of these debts by defendant. But this method of doing business, it now says, was virtually a direction by the debtor (the oil company) to its creditor (Phillips) to apply the money thus sent upon the salary which it, as contradistinguished from that which the trustee, owed him; and that Phillips could not, as the evidence shows he did, make the application of these payments from time to time upon the latter.

Undoubtedly, in the absence of authority, express or implied, for him to do otherwise, this contention would be good, though not, correctly speaking, under the particular rule mentioned, unless we hold that the company owed both debts. But it clearly appears that in making statements to the company of his disbursements of its funds for which its drafts were forwarded and cashed by him, plaintiff specified his salary of $200 a month, not as owing by the company under his employment by it, but salary which was due him as agent of the trustee. The company acquiesed in this application of payments that were made from time to time, and up to the date when the amount of his compensation from the company

was fixed in August, 1896, and no direction ever came from the company to plaintiff to apply the payments included in its drafts to any particular salary, and it is only by implication or inference that it is claimed any such application was intended, and that inference is drawn because the company must be supposed to pay its own, and not another's debt. Unfortunately for this contention, it is expressly shown by the statements which the company's treasurer must have approved by the drawing of drafts, that the claim for salary was the salary owing from the trustee. For more than two years after he entered its service, plaintiff's salary was not fixed, and the company knew it. Yet during this time, as well as afterwards, plaintiff was monthly applying, with the company's knowledge and without objection, payments of money made by, and belonging to, the company to this salary debt of the trustee. Indeed, the course of business was such that equity might consider that the parties regarded the two funds, that of the trustee and the company, as identical, and that all expenses of conducting the business of both were to be defrayed out of the common fund. The plaintiff was justified, therefore, in supposing that he had authority to pay himself out of the commingled fund for, and applying the proceeds of the drafts upon, the salary which he claimed from the trustee. He applied the balance which he drew from the company of $1039.61 on the compensation which the company agreed to pay him from time to time when he entered its services on the 15th of June, 1894. As we have said, the amount of this compensation was not fixed until August, 1896, and until it was fixed neither he nor the company could know how much he was entitled to draw.

Complaint is further made by appellant that the

court erred in refusing instructions asked by it in which are embodied the rules applicable to the right of a debtor to make application of payments to its creditor, and to an error in giving other instructions as modified, and still others given by the court of its own motion. We have examined the assignments, and our conclusion is that defendant has no just cause of complaint. The instructions given are as favorable as the law permits, under the facts of the case.

To sum up, we say that the course of business adopted by the trustee and by the oil company, and sanctioned by the beneficiaries was such that plaintiff was entitled not only to the compensation of $200 a month from the trustee but also to a compensation at the rate of $2,500 a year from the oil company, and that there was such a commingling of funds of the trustee with those of the corporation with the consent of all concerned, that the plaintiff, as the manager of both branches of what really was the same general business, had the right to pay himself both salaries out of this common fund. To say the least, since the burden of proof was upon the defendant to show that it had made full payment of the compensation which it admitted was originally due, it has failed to discharge that burden by a preponderance of the evidence. The jury were the sole judges of the weight and sufficiency of the testimony, and we are not disposed to interfere with their verdict. They passed upon defendant's claim that a full payment of this indebtedness had been made, under appropriate instructions of the court, and held that the defense was not made out; and, with all the evidence before them, found that there was a balance due, for which they gave a verdict.

Even upon the assumption by the defendant that the dispute should be determined in accordance with the rule for the application of payments by a debtor who is owing the same creditor on two distinct accounts, which apparently was the theory which it induced the trial court to adopt and upon which its instructions were based, the jury found against the defendant, and the evidence was legally sufficient to warrant their action.

Some other errors have been discussed, but we do not consider them important or deserving of consideration. While some irregularities occurred and some rulings were made which were not altogether justifiable, nevertheless we are satisfied that no prejudice resulted to defendant, and as we think that justice was done and a fair trial had the judgment should be affirmed and it is so ordered.

*Affirmed.*